**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                        **Case Nos.:   3:04cr10/MCR**
                                                  **3:11cv152/MCR/EMT**

**DAVID W. SVETE**
_____/

## ORDER

This matter is before the court upon Defendant's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (docs. 1003, 1026), as well as the Government's response thereto (doc. 1040).  After a careful review of the record and the arguments presented, this Court concludes that Defendant has not raised any issue requiring an evidentiary hearing, *see* Rules Governing Section 2255 Cases 8(a) and (b), or asserted any claim that entitles him to relief.  Thus, his motion must be, and is, denied.

### History of the Case/Procedural Background

Defendant and seven others were charged in a superseding indictment with ten violations of federal law (doc. 277).  In Count One Defendant was charged in a conspiracy involving three objectives: (1) to obtain money from investors by misrepresenting the true nature of the investment; (2) to divert the funds obtained from investors for the personal use of Defendant and others; and (3) to conceal or misidentify the origins of the diverted funds (*id*. at 9).  Count Two charged Defendant and others with conspiring to transfer in interstate commerce the fraudulently obtained funds in a manner so as to conceal and disguise the nature, location, source, ownership, and control of said funds (*id*. at 24).  Counts Three through Seven charged Defendant and others with substantive violations of

mail fraud or aiding and abetting others in the commission of mail fraud (*id*. at 25–26), and Counts Eight through Ten charged Defendant and others with substantive violations of the interstate transportation of funds obtained by fraud or aiding and abetting others in that regard (*id*. at 27). Defendant was convicted on all charges after an eight week jury trial in 2005 (*see* doc. 430).[1]

A Pre-sentence Investigation ("PSR") report was prepared prior to sentencing. Defendant had a base offense level of 6, which was increased by 18 levels due to the amount of loss (PSR ¶¶ 89, 90). The probation officer recommended additional two-level adjustments due to the fact that more than minimal planning and multiple victims were involved, the offense was committed through mass-marketing, the offense involved sophisticated means, and the offense was perpetrated against vulnerable victims (PSR ¶¶ 91–94). Defendant also received a four-level upward adjustment due to his leadership role in the offense and a two-level upward adjustment for obstruction of justice (PSR ¶¶ 95–96). His total offense level therefore was 38. Defendant had no previous criminal history, and thus his Criminal History Category was I. Pursuant to these calculations, the applicable advisory guidelines range was 235 to 293 months (PSR ¶ 136).

Defendant objected generally to the facts set forth in the PSR, and he also objected to the obstruction of justice adjustment, the loss calculation (which counsel contended should have been zero), the adjustment for mass marketing and sophisticated means, the victim-related adjustment, and the role adjustment (PSR addendum ¶¶ 157–169). In light of these objections, counsel asserted that Defendant's total offense level should have been calculated at 8 rather than 38, yielding an advisory guidelines range of 0 to 6 months (*see* PSR addendum ¶ 171).

At sentencing, the Court heard argument from the parties and the testimony of Henry Moran, a court appointed receiver, on the issue of loss (doc. 688 at 16–73). Defendant's counsel argued briefly each of his remaining objections, and then argued that

---

[1] Co-defendant Ron Girardot was also convicted on all counts (doc. 434). Co-defendants Kathleen LaFrance, Roger Lange, and Douglas Kordel were acquitted on all counts (docs. 431–433). Co-defendant Charme Austin pleaded guilty (*see* doc. 509). Upon the Government's motion the Court dismissed the superseding indictment as to co-defendants Ian Walcott and Marshall Anderson (*see* doc. 338).

a departure was warranted under 18 U.S.C. § 3553 due to the particular facts and circumstances of this case (*id*. at 74–101). The Court heard testimony from Defendant's sister and brief remarks from Defendant (*id.* at 102–05), as well as numerous statements about the impact the offense conduct had on specific victims (*id.* at 121–36). Mr. Moran and D. Benham Kirk took the stand to respond to some of the Court's questions about restitution (*id*. at 137–51). The Court initially indicated its intent to award restitution in the amount of $130 million, although it ultimately reserved ruling on the issue of restitution pending receipt of additional information from Mr. Moran (*id*. at 153–55). With respect to the objections, the Court rejected counsel's argument that the loss amount was zero (*id*. at 157–60).[2] It also overruled the objections to application of the adjustments for obstruction, Defendant's role in the offense, the vulnerable victims, sophisticated means, and more than minimal planning (*id*. at 160–62). The Court sustained a defense objection to the two-level adjustment for mass marketing (*id*. at 162). The amended total offense level was 36, and the revised guidelines range was 188 to 235 months. Despite the arguments of counsel to the contrary, the Court found that this range was sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a) (*id*. at 166–68). The Court then sentenced Defendant to a term of 60-months imprisonment on Count One, 200-months imprisonment on Counts Two through Seven, and 120-months imprisonment on Counts Eight through Ten, with all counts to run concurrently (*id*. at 169). The Court advised that although the victim's losses were not ascertainable at the time, they would be within 90 days, and the Court would determine the victims' losses and the restitution award within 90 days and enter the award by separate order (*id*. at 170–71).

Judgment was entered on June 23, 2005, reflecting a total sentence of a term of 200-months imprisonment in the Bureau of Prisons ("BOP"), three years of supervised release, and a $1,000 special monetary assessment (docs. 544 & 558). An amended judgment was entered on August 11, 2005, in which the same custodial sentence was

---

[2] The Court also stated that in the event the Eleventh Circuit disagreed with its calculation of loss, that it would find that in light of the evidence, including victim impact statements, that a loss amount of zero would not fully capture the harmfulness and seriousness of the conduct in the case and that an upward departure would be warranted (doc. 688 at 179–81).

imposed and Defendant was directed to pay restitution in the amount of $100,722,605.34 and to forfeit $21,000,000.00 in United States currency (doc. 593).

Defendant appealed, raising numerous grounds for relief.  He first challenged the sufficiency of the evidence as to the substantive mail fraud convictions.  The Eleventh Circuit found that Defendant's testimony along with other corroborative evidence was sufficient to support his convictions.  United States v. Svete, 521 F.3d 1302, 1310 (11th Cir. 2008)[3] (citing United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995) for the proposition that the jury was entitled to believe the opposite of Defendant's testimony).  Defendant also claimed that the Court abused its discretion when it gave the pattern mail fraud charge to the jury.  Under United States v. Brown, 79 F.3d 1550, 1557 (11th Cir. 1996), mail fraud requires the Government to prove that a defendant intended to create a scheme "reasonably calculated to deceive persons of ordinary prudence and comprehension."  Svete, 521 F.3d at 1310 (quoting Brown 79 F.3d at 1557).   This language is not reflected in the pattern jury instruction for mail fraud.  The Eleventh Circuit found that the Court's decision to give the pattern jury instruction—and not include the additional language from Brown—was an abuse of discretion, and it held that Defendant (and co-defendant Girardot) were entitled to a new trial on the substantive mail fraud counts.  Svete, 521 F.3d at 1311.  It also specifically found that the "incomplete" jury instruction did not affect Defendant's ability to conduct his defense with respect to the other charges.  Id.

The Eleventh Circuit next rejected Defendant's assertion that reversal was warranted due to the Court's denial of his pre-sentencing motion for a new trial based on alleged Brady and Giglio violations.  The violations in question were brought to light due to inconsistencies between the trial and sentencing testimony of Government witness Charme Austin.  Austin had been charged with conspiracy as a result of her involvement with Defendants Svete and Girardot.  She pleaded guilty to conspiracy in August of 2004,

---

[3] As discussed *infra*, the Eleventh Circuit issued two subsequent decisions related to Defendant's conviction.  The Court includes only the first case in this discussion to explain the result of Defendant's direct appeal.

testified at Defendant's trial on January 18 and 19, 2005, and was sentenced on May 6, 2005.   One week after her sentencing, the Government filed a notice disclosing inconsistencies between her testimony at Defendant's trial and at her own sentencing relating to her past criminal history and psychological treatment.   The Eleventh Circuit noted both that much of her testimony was beneficial to the defense (such that further impeachment might not be in the defense's favor) and that her testimony was "riddled with successful impeachment," and found that the Government's failure to disclose Austin's time in a military stockade did not rise to the level of requiring a new trial under Brady or Giglio.   Svete, 521 F.3d at 1312–17.   Finally, the appellate court rejected Defendant's challenges to the loss calculation and amount of restitution awarded.   Id. at 1317–18.

The Government's motion for rehearing en banc was granted.   Upon rehearing, the Eleventh Circuit reversed the panel's initial decision, holding that this Court did not err when it delivered the pattern jury instruction on mail fraud and expressly overruling United States v. Brown, 79 F.3d 1550 (11th Cir. 1996).   See United States v. Svete, 556 F.3d 1157, 1160, 1169 (11th Cir. 2009) (en banc).   The Eleventh Circuit declined to address other issues that it indicated were beyond the scope of its review[4] and remanded the case to the panel for its consideration.

The three-judge panel "reinstate[d] the original panel's determinations as to all other issues" and affirmed Defendant's convictions and sentences.   United States v. Svete, 565 F.3d 1363 (11th Cir. 2009).   Defendant's motion for rehearing was denied.   United States v. Svete, 348 F. App'x 556 (11th Cir. Jun. 18, 2009).   The mandate issued on June 26, 2009 (doc. 892).

On August 10, 2009—prior to expiration of the deadline for filing a petition for writ of certiorari—Defendant filed an application with the Supreme Court to extend the time to

---

[4] The issues identified by the Eleventh Circuit were Defendants' arguments that "the evidence was insufficient to support their convictions for mail fraud; the district court erred in its evidentiary rulings under Brady v. Maryland, 373 U.S. 83 (1963); the district court erred in calculating the amount of loss; the restitution order was erroneous; the evidence was insufficient to establish a conspiracy to commit money laundering; and the sentences for the mail fraud counts exceeded the statutory maximum."   556 F.3d at 1169–70.

file his petition from September 16, 2009, to November 15, 2009.[5]  Justice Thomas granted the application and extended the time to file the petition in case 09-7576 until November 15, 2009 (*id.*).  Defendant's petition was docketed in the Supreme Court on November 16, 2009, the Government responded on February 18, 2010, and Defendant filed a reply on March 3, 2010 (*id.*).[6]  The Supreme Court denied Defendant's petition for a writ of certiorari on March 22, 2010, without opinion.  Svete v. United States, 559 U.S. 1009 (2010).

Defendant filed the instant motion to vacate on March 20, 2011[7] (doc. 1003), and the Government was served on April 6, 2011 (*see* doc. 1014).  In the Court's service order, Defendant was afforded twenty-one (21) days to file a supporting memorandum, if he chose to do so (*id.*).  Before Defendant filed his memorandum, the Government moved to dismiss the § 2255 motion as untimely (doc. 1017).  Defendant filed a response in opposition to the motion to dismiss (doc. 1025) and an amended memorandum in support of his § 2255 motion (doc. 1026).  The assigned magistrate judge recommended that the Government's motion to dismiss be denied and that the Government be required to respond to Defendant's § 2255 motion (doc. 1031).  The Government responded to the merits of Defendant's motion on June 30, 2011 (doc. 1040), before this Court entered a final ruling (i.e., adoption of the magistrate judge's Report and Recommendation) on the

---

[5] Supreme Court Rule 13 sets forth the time limitations for petitioning the Supreme Court for a writ of certiorari.  In relevant part, it provides that a petition for the writ must be filed within ninety (90) days of the date an appellate court renders its decision, or in this case, on or before September 16, 2009.  *See* Sup. Ct. R. 13.1.  Moreover, Rule 13.5 specifically provides that a Justice may extend the time to file a petition for a writ of certiorari for a period not exceeding sixty (60) days, which is exactly what was done in Defendant's case.  *See also* 28 U.S.C. § 2101(c).

[6] The docket sheet for the Defendant's proceedings before the Supreme Court is available at: http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/09-7576.htm (last visited February 19, 2014).

[7] Although the motion was docketed on March 25, 2011, it was signed, and therefore deemed filed, on March 20, 2011, pursuant to the "prison mailbox rule."  Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

pending motion to dismiss (doc. 1055).  On July 1, 2011, the Court entered an order affording Defendant thirty days to reply to the Government's response (doc. 1041).[8]  The clerk received Defendant's first motion for enlargement of time on July 25, 2011 (doc. 1042), and the Court extended Defendant's response deadline to October 27, 2011 (*see* doc. 1043).[9]  Defendant has not filed a reply to the Government's response in opposition

---

[8] Rule 5(d) of the Rules Governing Section 2255 Proceedings provides that a movant may (but is not required to) file a reply "within a time fixed by the judge."

[9] Since that time Defendant has filed a myriad of documents, including an "Emergency Motion for the Government to Produce the Portions of the Record it Cites to . . ." (doc. 1044); another motion for enlargement of time (doc. 1058); a "Notice of Continuing Due Process Violation and Denial of Access to the Courts, with Incorporated Affidavits" (doc. 1060); a "Notice of Re-submission of Previously-filed Documents Which Have Not Been Docketed" (doc. 1061); a "Motion for Leave to File a Reply Brief to Address the Government's Scandalous Allegations [doc. 1045] and to Clarify What the Movant Requires in Terms of the Record for Good Cause Shown" (doc. 1062); a "Reply to the Government's Response to the Defendant's 'Emergency' Motion for an Order Directing the Government to Produce Records [doc. 1045]" and an affidavit/declaration in support thereof (docs. 1063, 1064); an objection, a motion for reconsideration, a notice of appeal, and a motion to vacate an order of this court [doc. 1056] (docs. 1066–1068, 1076); a motion for reconsideration, a motion to vacate, an objection and a notice of appeal of another order of this court [doc. 1065] (docs. 1070–1073); a "Motion to Strike the Respondent's Answer Pursuant to Fed. R. Civ. P. 12(f)" (doc. 1079); a motion for appointment of counsel (doc. 1080); a "Motion to Review the Record of the Underlying Criminal Case" (doc. 1081); a "Renewed Motion for Production of Record, Including Transcripts, Exhibits, and Court Filings" (doc. 1082); a "Motion for an Order to Produce Specific Grand Jury Testimony along with Specific Grand Jury Minutes" (doc. 1083); a "Motion for Government to Produce All Exculpatory and Other Brady and Jencks Act Material under its Continuing Obligation to Disclose . . ." (doc. 1084); a "Motion for the Government to Comply with its Continuing Discovery Obligation . . ." (doc. 1085); a supplemental motion for enlargement of time (doc. 1087); a "Motion for Return of Illegally Seized Property . . ." (doc. 1089); a motion for evidentiary hearing (doc. 1090); a "Motion for Release on Bond Pending Post-Conviction Proceedings with Incorporated Affidavit," a motion for expedited ruling on same, and a motion for extension of time to file a reply pending ruling on same (docs. 1093, 1095, 1096); an "Emergency Motion for Stay and/or Continuance and Notice of Change of Address" and a notice of re-submission of same (docs. 1099, 1100); a "Notice of Re-submission of Previously-filed Documents . . ." (doc. 1101); several motions for leave to file replies to the Government's responses to various motions along with the proposed replies (docs. 1102–1107, 1113, 1114, 1117, 1118, 1154); a "Motion for Leave to file Reply Brief to 'Government's Response to the Defendant's Motion for Return of Property'. . ." (doc. 1102); another motion for release on bond and notice of re-submission of same (docs. 1108, 1109); a motion for enlargement of time to file objections, "provisional" objections, and a notice of appeal of an order of this court [doc. 1098] (docs. 1110, 1111, 1122); a motion for enlargement of time to renew a request for court documents in response to the same order (doc. 1116); a "Notice of Intentional Interference with Court Filings and Other Legal Mail" (doc. 1123); a response to a notice filed by the Government (doc. 1125); a "Report to the Court" (doc. 1126); an "Emergency Notice of Transfer from Current Institution and Renewed Motion for Continuance and/or Motion to Stay" (doc. 1127); objections to, and an appeal of, yet another order of this court [doc. 1124] (docs. 1128, 1129); a "Notice of Delayed Service/Notice of Court's Order [doc. 1120] . . ." (doc. 1133); an appeal of an order of the district court [doc. 1134] and various submissions relating to this appeal (docs. 1139, 1144–1146); a "Motion for Clarification as to District Court's Assertion of Jurisdiction . . ." (doc. 1142); an "Emergency Motion for an Enlargement of Time to File His 'Renewed Request for Specific Court Documents' and His Objections . . ." (doc. 1152); a "Motion for Court Order Directing Former Counsel to Comply with ABA Rules and to Deliver the Case File to the Incarcerated, Pro Se Movant . . ." (doc. 1155);

to his § 2255 motion, although over two years have elapsed since the Court first afforded Defendant the opportunity to do so, and the time "fixed by the [Court]" for filing a reply has long expired.  *See* Rules Governing § 2255 Proceedings, Rule 5(d).

### Factual Background[10]

Defendant Svete and his co-defendants and agents were in the business of selling financial interests in viatical settlements, which are legitimate insurance products in which persons (known as viators) who have terminal illnesses sell the right to receive benefits under their life insurance policies for tax free cash.  The sale of viaticals is usually made to a provider company, which in turn finds independent purchasers to invest in the policies, typically through a sales agent.  By selling their policies to third parties for less than the mature value of the policies, the viators benefit from the proceeds while alive and can use the money, for instance, to cover the costs of medical care.  Purchasers receive a high return on their investment if the viator dies within the time projected by the viatical settlement provider.   On the other hand, investors risk a reduction of their return or a complete loss if the viator does not die within the time projected because the investor must continue to pay the premiums on the policy as they accrue or the policy will lapse.

Defendant became involved with viaticals in 1997 when he incorporated LifeTime Capital, Inc. ("LifeTime Capital") in Nevada as a provider company.  He later incorporated several other businesses offering financial, office, marketing, and viatical services.  Defendant's control of these corporations was secreted, thus misleading investors and providing an avenue to launder money taken by fraud.

Companies controlled by Defendant obtained more than one hundred million dollars from more than 3000 investors, more than a third of whom were over the age of 65.  Investors who purchased the viaticals testified that sales agents made false statements

---

a "'Provisional' Renewed Request for Specific Court Documents . . . " (doc. 1156); and objections to, and an appeal of, an order of this court (docs. 1157, 1158).

[10] The facts set forth herein are taken from the Eleventh Circuit's opinions in this case and are included only to provide a brief, general background.  *See* United States v. Svete, 521 F.3d 1302 (11th Cir. 2008); United States v. Svete, 556 F.3d 1157 (11th Cir. 2009) (en banc); United States v. Svete, 565 F.3d 1363 (11th Cir. 2009).  More detailed facts are set forth in the PSR and these opinions.

and provided them with literature that contained false statements about the life expectancies of viators and the risks associated with the investments. For instance, investors were told that the insurance policies were held by terminally ill patients as determined by independent medical specialists who had access to the viators' complete medical records and doctors, when actually many of the viators were not terminally ill and the information that was reviewed by independent medical professionals was just a summary of the viators' medical records, not the actual records themselves. A medical underwriter who worked for Defendant created sham opinions of life expectancy and endorsed them with forged signatures of the independent physicians. Initial viatical settlement contracts reflected that the terminally ill status of a viator was determined by a physician's medical opinion. However, the pre-existing investor agreements were altered to remove the terms "terminally ill" and "by a physician" without knowledge or consent of the investors.

Investors were also told that an independent investment servicing company maintained a premium reserve account for the purpose of underwriting the policies. This company was created and controlled by Defendant and lacked sufficient funds to pay premiums on purchased policies as they came due when the viators lived longer than expected. Investors were thus obligated to make additional premium payments in order to avoid a total loss of their investment.

As a defense to the charges of mail fraud, Defendant argued that a person of ordinary prudence and sophistication would have read the contracts and ignored the false statements by the sales agents. In rejecting this argument, the Eleventh Circuit noted that Defendant's scheme was so sophisticated and complex that even the most intelligent investor would have been defeated in his quest for the truth. There was no information readily accessible in the public domain that the prospective investors could obtain to confirm or disprove the representations of the sales agents. There was also an "illusion of independence and reliability," and the investors had no way to ascertain that in fact the viators were not terminally ill. Defendant also took the position, and in fact the essence of

his defense was, that there was nothing illegal about what he did and that he merely engaged in normal business practices.

## Legal Analysis

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365

F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this Court must, with much deference, consider "whether counsel's assistance was reasonable considering all the

circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.   When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant

increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

Additionally, to establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313.  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant  has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.  His belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief." In order for the court to conduct a hearing on a disputed issue of fact, a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239. Lastly, disputes involving purely legal issues can be resolved by the Court without a hearing.

**Defendant's Claims for Relief**[11]

**Ground One**

Defendant claims that counsel[12] was constitutionally ineffective because he "failed to investigate the grand jury proceedings."  Specifically, Defendant claims that counsel should have moved for dismissal of the indictment due to the Government's alleged

---

[11] Defendant has grouped the discussion of some of his related claims in his memorandum and, where practical, the Court has adopted the same grouping.

[12] Defendant was represented by several different attorneys throughout the course of the proceedings, at times more than one.  However, for the sake of simplicity, "counsel" will be referenced in the singular, regardless of whether Defendant refers to one or more than one lawyer.

violation of the Petite[13] policy of the U.S. Department of Justice ("DOJ"), which resulted in a violation of his Fifth Amendment rights.

Defendant's reliance on the Petite policy is misplaced.  The central purpose of this policy is to avoid "any unfairness associated with needless multiple prosecutions."  United States v. Nelligan, 573 F.2d 251, 254 (5th Cir. 1973)[14] (quoting Rinaldi v. United States, 434 U.S. 22, 31 (1977)).  It was "designed to limit the exercise of the power to bring successive prosecutions for the same offense" and as such relates to sequential prosecutions in state and federal fora.   Nelligan, 573 F.2d at 255 (quoting Rinaldi, 434 U.S. at 28); see also United States v. Hyder, 732 F.2d 841 (11th Cir. 1984); Andiarena v. Keohane, 691 F.2d 993, 996 (11th Cir. 1982).  The Petite policy is an "internal policy of self restraint that should not be enforced against the government."  Nelligan, 573 F.2d at 255 (citations omitted); United States v. McInnis, 601 F.2d 1319 (5th Cir. 1979) (court will not enforce Petite policy without a compelling reason because it only sets internal guidelines for the Department of Justice).  There was no dual prosecution in this case, and the Petite policy simply has no application to Defendant's case.

Similarly, Defendant's assertion that his right to be protected from double jeopardy was violated due to his investigation by multiple grand juries is unfounded.  He was not placed in jeopardy twice.  See United States v. McCoy, 678 F. Supp. 2d 1336 (M.D. Ga. 2009) (noting that government may submit its evidence to later grand juries following a return of no true bill) (citing United States v. Thompson, 251 U.S. 407, 414–16 (1920)).  Counsel for the Government also notes that a review of the Court's sealed records demonstrates that no grand jury ever returned a "No True Bill" as to Defendant (doc. 1040 at 7).  Defendant has not shown his entitlement to relief.

---

[13] Petite v. United States, 361 U.S. 529, 531 (1960).

[14] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

**Ground Two**

Defendant asserts that his constitutional rights were violated when counsel failed to investigate and discover that the Government took an impermissible "short cut" with the third grand jury, by using the testimony of FBI Agent Victoria Harker to summarize the evidence presented before prior grand juries (doc. 1003 at 6). Defendant asserts that Agent Harker's testimony contained over 200 (unidentified) factual misstatements, and as a result he was prejudiced by having to stand trial.

The Government may procure an indictment using testimony that was given to prior grand juries, including hearsay testimony. *See* United States v. Waldon, 363 F.3d 1103, 1109 (11th Cir. 2004) (allowing an agent to re-read previous testimony to a subsequent grand jury); United States v. Cathey, 591 F.2d 268, 272–73 n.5 (5th Cir. 1979). In Costello v. United States, 350 U.S. 359, 363 (1956), the Supreme Court stated: "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. at 363 (footnote omitted). An indictment is not invalidated by a grand jury's consideration of hearsay. Bracy v. United States, 435 U.S. 1301, 1302 (1978) (citing Costello). The Bracy court noted that the presentation of inadmissible evidence before the grand jury poses no threat to the integrity of the fact-finding process. 435 U.S. at 1302. A panel of the Eleventh Circuit has even suggested that the language of Bracy would support a holding that "an indictment is not invalidated by the grand jury's consideration of perjured testimony." Anderson v. Secretary for Dep't of Corr., 462 F.3d 1319, 1327 (11th Cir. 2006). A more important consideration appears to be what happens after the grand jury proceedings. Several courts have held that a subsequent conviction cures non-constitutional errors in the grand jury proceedings. *See* United States v. Mechanik, 475 U.S. 66, 72–73 (1986); United States v. Vincent, 416 F.3d 593, 601 (7th Cir. 2005) (even if errors in grand jury proceedings would have justified dismissal of indictment prior to trial, petit jury's subsequent conviction rendered these errors harmless beyond a reasonable doubt); United States v. Orrego-Martinez, 575 F.3d 1, 8 (1st Cir. 2009) ("All but the most serious errors before the grand jury are rendered

harmless by a conviction at trial") (citation omitted).   The only "prejudice" of which Defendant complains is that he was forced to stand trial and was ultimately convicted.  This is insufficient to afford him relief.

**Grounds Three, Four, Twenty-Five, and Thirty**

In these four claims, Defendant asserts that his attorney was constitutionally ineffective because he failed to move for dismissal of certain counts of the superseding indictment for lack of jurisdiction and/or venue.  Specifically, Defendant contends that Count One (general conspiracy) and Count Two (conspiracy to launder money) were subject to dismissal because none of the overt acts occurred in the Northern District of Florida.

Title 18 U.S.C. § 3237(a) provides generally that offenses begun in one district and completed in another may be prosecuted in any district in which the offense "was begun, continued, or completed."  Offenses involving use of the mails are deemed to be continuing offenses, and they may be prosecuted "in any district from, through, or into which such . . . mail matter . . . moves."  *Id*.  Venue for a money laundering offense is proper in any district in which the financial or monetary transaction is conducted or in any district where a prosecution for the underlying unlawful activity could be brought.  18 U.S.C. § 1956(i). The allegations in the superseding indictment are sufficient to support both jurisdiction and venue in the Northern District of Florida for the charged crimes (*see* doc. 277 at 25–29). Written communications material to the scheme to defraud were mailed from this district to other locations (*id*. at 26), and United States currency that had been stolen, converted, and taken by fraud was transported between Pensacola, Florida, and other locations.

Counsel is not ineffective for failing to preserve or argue a meritless claim.  Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement);

Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).   Because Defendant's arguments have no merit, counsel was not constitutionally ineffective for his failure to raise them.

**Grounds Five, Twenty-Six, and Thirty-One**

Defendant contends that counsel rendered constitutionally ineffective assistance because he failed to move for dismissal of Count Two of the indictment for failure to charge an offense.   Defendant further contends that counsel did not request a proper jury instruction with respect to Count Two, and finally he contends that counsel failed to move for a dismissal or judgment of acquittal in light of the Government's failure to prove Defendant's intent to conceal transactions.

Counsel was not constitutionally ineffective as argued by Defendant.   Counsel actually did move to dismiss Count Two of the Indictment (doc. 176), as well as every other count (see docs. 172, 175, 178, 179, 180, 181).   Counsel also filed a motion for a judgment of acquittal (doc. 409).   Defendant also challenged his conviction on Count Two on appeal, and the Eleventh Circuit upheld Defendant's conviction.   See Svete, 556 F.3d 1157. Furthermore, the Court notes that defects in an indictment can be harmless or can be cured by instructions to the jury.   United States v. Gibson, 708 F.3d 1256, 1279–80 (11th Cir. 2013) (citations omitted).   Finally, to the extent Defendant is rearguing the adequacy of the evidence presented at trial, the sufficiency of the evidence was upheld on appeal,

<u>Svete</u>, 521 F.3d 1302, and he may not re-litigate the issue in a § 2255 motion.  <u>Nyhuis</u>, *supra*.

**Grounds Six, Eight, Twenty-Seven, and Thirty-Two**

Defendant contends that the Government was collaterally estopped from bringing this case due to the judgment of acquittal rendered in the case of <u>United States v. Rodgers</u>, Case No. 3:02cr6/RV (N.D. Fla. July 19, 2002).  Defendant contends that, in response to a defense motion for a bill of particulars, the Government took the position that the case at bar was the "same case" as the <u>Rodgers</u> case, and hence no bill of particulars was necessary.  The basis for Defendant's assertion is unclear, as the Government's written response to the motion contains no such representation (doc. 205).  In any event, Defendant appears to misapprehend the doctrine of collateral estoppel, which bars a subsequent prosecution when "a fact or issue necessarily determined in the defendant's favor in the first trial is an essential element of the conviction at the second trial."  <u>United States v. Valdiviez-Gaza</u>, 669 F.3d 1199, 1201 (11th Cir. 2012); <u>United States v. Magluta</u>, 418 F.3d 1166, 1174 (11th Cir. 2005); <u>United States v. Garcia</u>, 78 F.3d 1517, 1521 (11th Cir. 1996) (citations omitted).

The defendants in <u>Rodgers</u>—Linda Rodgers, William Mattox, and Lloyd Rodgers—were three sales agents for LifeTime Capital.  They were convicted by a jury of conspiracy to commit mail fraud and wire fraud and to transport money taken by fraud; twelve counts of mail fraud; and eleven counts of interstate transportation of money taken by fraud.  The <u>Rodgers</u> defendants moved for judgment of acquittal, and the Court granted their motion.  The Court found that the Government had proven that LifeTime Capital had engaged in fraudulent conduct, but that it had failed to produce evidence establishing that the three named defendants intended to defraud investors or had conspired to violate the law (*see* Case No: 3:02cr6/RV, doc. 122 at 9–10, 11, 20).  The fact that the three defendants named in the <u>Rodgers</u> case were not personally implicated in the fraud that the Government had proven, had no bearing upon Defendant's own role in the fraudulent conduct.  Thus, the acquittal of the <u>Rodgers</u> defendants at a separate trial did not preclude the Government from pursing the instant case against Defendant for his role in the

fraudulent conduct, or from introducing evidence of conduct related to the fraud in Defendant's trial.

**Grounds Seven, Twenty-Eight, and Thirty-Three**

Defendant contends that trial counsel was constitutionally ineffective for failing to move to dismiss the substantive counts of the indictment, due to the fact that the indictment improperly charged Defendant under both a "direct perpetrator" and an "aiding and abetting" theory. Defendant contends that the aiding and abetting charge was invalid in light of the judgment of acquittal entered in favor of the three salespeople in the Rodgers case, because he could not have "aided and abetted" conduct that was not a crime. As a result, the entire indictment was constitutionally infirm. Alternatively, he alleges that the jury instructions were improper because, given that the jury was instructed in the alternative and there was no special verdict form, he could have been convicted under an improper aiding and abetting theory.

Defendant's assertion that the aiding and abetting referred only to the three salespeople acquitted in Rodgers is misplaced. The Court in Rodgers specifically found that the evidence during that trial "plainly established that many investors had been the victims of fraudulent acts by LifeTime Capital, Inc. and its officers and managers" (Case No. 3:02cr0006/RV, doc. 122 at 9). The indictment in the instant case did not specifically charge Defendant with aiding and abetting only the Rodgers defendants. Thus, counsel was not constitutionally ineffective for failing to make a motion to dismiss the substantive counts of the indictment based on the theory he raises here.

**Grounds Nine, Ten, and Twenty**

Defendant claims that counsel was constitutionally ineffective for failing to challenge alleged Brady,[15] Jencks Act,[16] and Giglio[17] violations (doc. 1003 at 10). In particular, Defendant claims that the Government was in possession of a "computer hard-drive back

---

[15] Brady v. Maryland, 373 U.S. 83 (1963).

[16] 18 U.S.C. § 3500.

[17] Giglio v. United States, 405 U.S. 150 (1972).

up tape" belonging to LifeTime Capital (*id.*).   A former employee of LifeTime Capital allegedly stole the tape, which Defendant asserts contained exculpatory evidence, and then provided the tape to the Government.   Defendant states that he and his attorney saw the tape in late winter or early spring of 2004 when they went to the State of Florida Department of Financial Services office to review the Government's evidence.   A state agent who was present purportedly promised to have the tape duplicated and a copy provided to the defense, but no copy was ever provided.   Defendant states he was subsequently advised by his counsel that he would not be provided with a copy of the tape because the Government had lost it.

Defendant further states that at trial the Government introduced into evidence several items it had obtained from the tape, including several email strings.   In particular, Defendant notes that the Government presented an email string between Defendant and LifeTime Capital sales representative G. Russell "Russ" Hagan, without the final email in the exchange between the two men.   Defendant argues that the portion of the email exchange introduced by the Government made it appear as though Defendant was prepared to commit fraud, whereas the final portion of the email exchange reflected that Defendant had consulted with corporate counsel in an attempt to avoid committing fraud.[18]

---

[18] The final email exchange in question is dated April 8, 1999; it is addressed to Russell Hagan and "cc'd" to Gary Kozee; its "Subject" is "RE: Dr. Majors:"; and it reads as follows:

RUSS:
I have discussed your idea of cashing Doc. out early.  While I agree that this would be a boost for sales, I have discussed this with LifeTime Capital, Inc., as well as our Legal Council [sic]. (We run EVERYTHING past our attorneys before we do ANYTHING.)

Unofrtunately [sic], doing what you propose would be FRAUD.  It would DEFINITELY be unethical, and probably ILLEGAL.

As much as we all want to increase sales, neither me nor A.C Financial, Inc., is willing to do business that way.

We have prided ourselves on doing good, clean, honest, ethical business, and we will continue to do so.

I am sorry if we cannot honor your request.

(I kind of THOUGHT that this may be the case, and the attorneys confirmed it.)

Defendant notes that the defense "was able to obtain a copy of this exculpatory email anyway" and attempted to introduce a copy of the exculpatory portion of the email exchange, at which point the Government indicated its intent to challenge the authenticity of the lone email and basically asserted that it had been fabricated by the defense (doc. 1003 at 11).  Although the email was initially admitted, defense counsel later requested that the email be stricken from the record over Defendant's objection, a course of action that Defendant contends was prejudicial to him.  Defendant asserts that his counsel was ineffective because he failed to move to compel production of the tape containing the exculpatory email, failed to move for dismissal of the indictment for the failure to produce the tape, and allowed the Government to "use" the inculpatory portions of the email string before he voluntarily withdrew the final exculpatory exchange in the email string (*id*. at 11–12).

Defendant has not shown that his counsel was constitutionally ineffective with respect to the email in question.  As explained in the PSR, two witnesses testified that they had seen four emails between Defendant and a salesman, in which the salesman was asking that Defendant falsify records to generate new business (PSR ¶ 68).  The emails reflected that Defendant agreed to do this.  At trial, Defendant produced the email in question that he claimed was part of the same exchange, although it was dated a number of days after the initial string of messages (*id*.).  The Government objected to its introduction because it had not seen the email before, it requested information regarding the source of the email, and it advised that it would call an expert to testify with respect to the possibility of falsifying such an email (*id*.).  The Court allowed the email into evidence over the Government's objection.

The Court later informed the parties that it had allowed the email to be introduced with some reluctance and hesitation (doc. 670 at 194).  It discussed the problems of authentication and hearsay, and the Government noted that Mr. Kozee, who purportedly

---

David W. Svete

(*see* doc. 1003 at 66).

Case Nos: 3:04cr10/MCR; 3:11cv152/MCR/EMT

was sent a copy of the email at the time it was sent to Hagan, testified that he had never seen the document before (*id.* at 194, 200).   The Government also indicated it was searching for the email (where defense counsel suggested it might have come from) but had not yet found it (*id.* at 200), a comment that would appear to indicate that the Government was searching the tape that Defendant now contends was lost.[19]   After some discussion, defense counsel offered the option of removing the email as an exhibit rather than allowing what "would be a distraction and potential unfair prejudice through the introduction of the government's expert testimony" (*id.* at 203).   The Court allowed the exhibit to be withdrawn (*id.*).

Defendant has proffered nothing in these proceedings to establish that the exculpatory email was legitimate.   In fact, the developments at trial, including the fact that one of the purported recipients testified that he had never seen the email, give rise to a reasonable inference that the email was not legitimate.[20]   Given such reasonable inference, counsel was not ineffective for voluntarily withdrawing the disputed email.   Additionally, the Government stated it had no knowledge of the disputed email and could not locate it. Counsel was not ineffective for failing to move to compel the production of an email that the Government, to its stated knowledge, did not possess.   Nor was counsel ineffective for failing to move to dismiss the indictment on the ground the Government failed to disclose exculpatory evidence—again, evidence, to the Government's knowledge, it did not possess.   Moreover, Defendant's contention that counsel was ineffective because he "permitted" the Government to selectively rely on inculpatory portions of the email has no merit.   Defendant has not asserted or shown that those portions of the email string which were not withdrawn were subject to any viable challenge.   Further, the defense presumably

---

[19] In its response to Defendant's motion, the Government notes that it did not lose the tape, as Defendant contends, and notes that Defendant's contention is refuted by the record (*see* doc. 1040 at 18). The Court notes that Government's Exhibit 177 (copies of hard drives of LifeTime Capital records) was introduced at trial as Court Exhibit 2, and is still maintained by the clerk of court in the court vault.

[20] The Government brought up the issue of the "Hagan email" at sentencing (doc. 688 at 90).   In discussing its ruling on the obstruction adjustment, the Court stated that it did not need to consider the Hagan email for this purpose and that it declined to do so (*id.* at 161).

could have called as witnesses any of the attorneys with whom Defendant claimed to have consulted about Hagan's request. Lastly, Defendant could have testified about the email, but he failed to do so.[21] In short, counsel was not constitutionally ineffective for his failure to move to dismiss the indictment based on alleged violations of Brady, the Jencks Act, or Giglio.

### Ground Eleven

Defendant also claims that counsel was constitutionally ineffective for his failure to assert violations of Brady, Giglio, and the Jencks Act due to the Government's alleged failure to produce certain exculpatory evidence in the form of reports relating to FBI interviews or interrogations ("section 302 reports"), investigator notes, and witness statements. In support, Defendant claims that former employees Shausta Merrill and Michael Seagraves gave exculpatory statements when they were interviewed by the Government, but that no agent notes were provided to the defense. Defendant does not identify the allegedly exculpatory statements (or explain why he could not have obtained the statements or the same information directly from the witnesses themselves, if, in fact, they existed).[22] His conclusory assertions that counsel was constitutionally ineffective for his failure to object to the production of same do not entitle him to relief.

### Ground Twelve

Defendant asserts that trial counsel was constitutionally ineffective because he grossly underestimated Defendant's sentencing exposure and failed to recommend that Defendant enter a guilty plea. Defendant claims his counsel told him that, if he were convicted, the worst case scenario was a sentence of six months in prison (doc. 1026 at 23). He claims that as a result of counsel's erroneous advice, he proceeded to trial, where he was "blind-sided at sentencing" (id.). Defendant further claims that but for counsel's

---

[21] The trial transcript reflects counsel's representation to the Court that, had the email remained in dispute, he likely would make the tactical decision not to raise the issue during Defendant's testimony, were Defendant to testify (doc. 670 at 203).

[22] The Court also notes the Government's assertion that both of these witnesses received immunity letters, which does not support Defendant's assertion that either witness made exculpatory statements (doc. 1040 at 31).

erroneous advice, he would have entered a plea of guilty and likely received a lower sentence.

As an initial matter, Defendant's representation that counsel told him that he would be facing at most a six-month sentence strains credulity, as it is well known by federal defense practitioners that guidelines calculations, particularly in a complex case of this nature, involve numerous variables that are virtually impossible to predict until the PSR is prepared. The uncertainty is such that this Court routinely advises defendants who are contemplating entering guilty pleas that there are no sentencing guarantees and that even a sentencing range is virtually impossible to determine until completion of the PSR.

Furthermore, the United States Attorney's Office for this district does not plea "bargain" with respect to sentences. Thus, any plea would have required Defendant to plead guilty "straight up" to various (or all of the) charges in the ten-count indictment, which charges carry maximum penalties of five years (Count One), ten years (Counts Eight through Ten), and twenty years (Counts Two and Counts Three through Seven) (*see, e.g.*, PSR at pp. 1–2). Accordingly, a plea to any or all of Counts Two through Ten would have exposed Defendant to statutory maximums well above six months. Likewise, a "straight up" plea would have yielded a guidelines sentencing range far greater than six months in light of the amount of the loss, number of victims, and other relevant guideline factors that the Court ultimately found applicable.

Defendant asserts that had he entered a guilty plea, his guidelines range would have been 108–135 months in lieu of 188–235 months. His calculation is based on an assumption that he would have received a three-level reduction for acceptance of responsibility and that he would not have been assessed the two-level adjustment for obstruction of justice based on what the Court found to be his false testimony at trial (doc. 1026 at 23). In light of Defendant's continued protestations of innocence to this day, he certainly would not have been eligible for a three-level acceptance of responsibility adjustment. Further, the Court would not have accepted a guilty plea—and does not accept a guilty plea—from a defendant unwilling to acknowledge his guilt. Defendant has not shown his entitlement to relief on this ground.

**Ground Thirteen**

Defendant contends that counsel was constitutionally ineffective because he waived Defendant's right to a speedy trial and/or proceeded to trial without moving to dismiss the indictment for a violation of this right.  Defendant maintains that he was prejudiced as a result of this delay which allowed the Government to continue to investigate, interview witnesses, and subpoena witnesses.

In assessing whether there was a speedy trial violation, the Court considers factors including the length of delay, the reason for the delay, a defendant's assertion of his right to a speedy trial, and any prejudice stemming from the violation.  *See* Barker v. Wingo, 407 U.S. 514, 530 (1972). Defendant's trial was initially scheduled for March 22, 2004 (doc. 64).  Counsel moved for a continuance on March 5, 2004, in order to be able to properly investigate and prepare for what was slated to be a document-intensive trial (doc. 106). Appended to the motion was a waiver of speedy trial, signed by both Defendant and his lawyer (*id.* at 4).  The waiver explained that it was entered with the advice of its undersigned counsel and described the breadth of and reason for the waiver (*id.*). Defendant cannot now assail counsel's decision to waive a speedy trial after he voluntarily signed an express waiver of same.  The trial was re-scheduled to commence on September 13, 2004 (doc. 120).  However, after a jury was selected but before it was sworn, the Court dismissed the jurors and continued the trial again due to the threat of Hurricane Ivan (docs. 354, 355).  After the storm, which caused significant damage in the greater Pensacola area, the Court held a telephone conference with the parties, and the trial was rescheduled for January 7, 2005 (doc. 359).  Thus, a great deal of the delay was due to factors outside of counsel's, or anyone's, control.

Defendant also claims that he was prejudiced because, as a result of the delay, he was sentenced under an advisory rather than mandatory guidelines regime, and his sentence was increased from 0–6 months to 17 years (doc. 1026 at 24).  There is no factual basis for Defendant's claim.  Defendant was sentenced within the applicable advisory guidelines range, and the Court notes that the advisory guideline regimen affords

the sentencing court more, rather than less, flexibility in fashioning an appropriate sentence.  Thus, there was no prejudice.

In sum, Defendant has not shown a violation of his right to speedy trial or that counsel was constitutionally ineffective for failing to raise this issue.

**Ground Fourteen**

Defendant contends that counsel was constitutionally ineffective because he failed to present more than one theory of defense, particularly given that the defense presented was "invalid."  The defense presented at trial was that Defendant and his companies were simply conducting business and that Defendant consulted with attorneys and employed outside investigative attorneys to ensure that his employees were acting in an ethical manner.  The fact that this defense was ultimately unsuccessful does not support a finding of ineffective assistance of counsel.  Counsel's tactical decisions regarding which defense to pursue are "virtually unchallengeable," and counsel will not be deemed constitutionally deficient because of them.  United States v. Smith, 459 F.3d 1276, 1303 (11th Cir. 2006) (citing Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005)); Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (quoting Strickland;  Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995)).  Furthermore, Defendant has not shown that the alternate theories of defense he proposes would have been any more successful.  His assertion that raising only a single defense is constitutionally ineffective assistance of counsel has no basis in law.

**Grounds Fifteen and Nineteen**

Defendant argues that trial counsel's performance was constitutionally ineffective in that he failed to object to the consolidation of the Defendant's trial with co-defendant Ron Girardot.  He further argues that counsel's belated motion for a severance was ineffective and prejudicial.

Girardot had apparently made certain statements against Defendant, but denied same during his testimony.  This opened the door for the Government to introduce the rebuttal testimony of FBI Agent Harker, some of which was prejudicial to Defendant. Defense counsel argued in his motion for a new trial that the Court should have granted

the defense request for a severance or mistrial in connection with the Government's examination of Ron Girardot and the testimony of Agent Victoria Harker (doc. 455 at 7–8).

In asserting that the timing of counsel's motion for severance was tantamount to ineffective assistance of counsel, Defendant appears to believe that if defense counsel had moved for a severance at an earlier point in the trial, the motion would have been granted. Defendant's belief, however, is undermined by the fact that the Court denied his motion to sever *after* the testimony prejudicial to Defendant was elicited.  It is thus evident that a motion to sever, made *before* the prejudicial testimony was elicited, would have been denied.  Further, granting a severance is the exception rather than the norm, and a district court has broad discretion in determining whether to grant a severance.  *See, e.g.,* United States v. Lopez, 649 F.3d 1222, 1235–36 (11th Cir. 2011).

Generally, persons who are charged together should also be tried together.  United States v. Chavez, 584 F.3d 1354, 1359–13 (11th Cir. 2009); United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007); United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005).  In determining whether a joint trial is appropriate, the district court must "balance the prejudice that a defendant may suffer from a joint trial, against the public's interest in judicial economy and efficiency."  United States v. Hill, 643 F.3d 807, 828 (11th Cir. 2011). In this case, the length of the trial certainly weighed against granting a severance.

Other permissible grounds for granting a severance include the existence of evidence that is probative of a defendant's guilt but is admissible only against a co-defendant, or conversely, the existence of exculpatory evidence that would only be admissible in a separate trial.  *See* United States v. Lopez, 649 F.3d 1222, 1235 (11th Cir. 2011).  Neither situation is present here.  The mere fact that prejudicial evidence was introduced as a result of the joint trial is insufficient to support a finding that a severance would have been warranted, as some degree of bias is inherent in any joint trial.  Baker, 432 F.3d at 1236.

In the context of appellate review, the denial of a motion to sever will only be reversed if a defendant can demonstrate that he suffered "compelling prejudice against which the district court could offer no protection."  Hill, 643 F.3d at 828 (citation omitted).

An example of this might be if the jury was unable to sift through the evidence an make an individualized determination as to each defendant.  *Id*.  However, the jury is presumed to have followed the judge's instructions.  Richardson v. Marsh, 481 U.S. 200, 211 (1987); Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Calderon, 127 F.3d 1314, 1334 (11th Cir. 1997); *see also* United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Therefore, if jurors are instructed to consider evidence only with respect to one defendant or for a singular purpose, they are presumed to have followed this instruction.  United States v. Hill, 643 F.3d 807, 829 (11th Cir. 2011) (the court may presume "that jurors are able to compartmentalized evidence by limiting instructions specifying the defendants against whom the evidence may be considered") (citing United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004)).  The jury in this case was instructed to consider each charge and the evidence pertaining to it separately, as well as the case of each defendant (doc. 429 at 38).  Furthermore, co-defendants do not suffer prejudice simply because one co-defendant's defense directly inculpates another, or it is logically impossible for a jury to believe both co-defendant's defenses.  Hill, 643 F.3d at 829.  Defendant has not shown that counsel was constitutionally ineffective with respect to his motion for severance, or that had counsel filed a motion in limine to restrict Girardot's testimony, that such a motion would have been well-taken.  Defendant is not entitled to relief.

**Ground Sixteen**

Defendant contends that counsel was constitutionally ineffective because he failed to interview key defense witnesses.  In support of this claim he has submitted the affidavits of Terena Fugate (doc. 1026-1 at 42),[23] and testifying witnesses Gregory Moroz, Robert G. Slowey, Jr., and John Storey (doc. 1026-1 at 43–51).  The affidavits of Moroz, Slowey and Storey are substantially similar.  Each man states that although he expected defense counsel to prepare him for testifying, this did not occur, and had counsel done so, the

---

[23] The Government characterizes Ms. Fugate as a middle level functionary "who only had anecdotal hearsay evidence to offer about Austin, Zima, Nofsinger, Kozee, Marquitz, and Parker" and could have offered, at most, "testimony . . . to impeach these witnesses" (doc. 1040 at 31).

witness's testimony would have been much more thorough and clear (*id*. at 46, 49, 51). The Government notes that the testimony of these three witnesses was not significant as none of them had ever worked for any of Defendant's companies. Defendant does not suggest how "clearer" testimony from these non-essential witnesses would have altered the outcome of his case.

Defendant also complains that counsel should have called a number of additional witnesses. The witnesses are not specifically identified in his memorandum. Instead, Defendant references an email to counsel in which the witnesses were identified (doc. 1026-1 at 41). The email in question, however, shows that it included a PDF file attachment that is not viewable from Defendant's submission; thus, the Court cannot ascertain the identity of the individuals listed therein, or the testimony that Defendant believes they would have provided.[24]

The Government has not presented the Court with an affidavit from defense counsel from which the Court might gain further insight into counsel's thought processes (*see* doc. 1040-1 at 2). However, after review of the record in this case, the undersigned is left with the distinct impression that Defendant expected counsel to investigate every possible aspect of this case and to leave absolutely no stone unturned. Counsel "does not enjoy the benefit of unlimited time and resources," and every attorney "is faced with a zero-sum calculation on time, resources, and defenses to pursue at trial." Turner v. Crosby, 339 F.3d 1247, 1276 (11th Cir. 2003) (citing Chandler, 218 F.3d at 1314 n.14 (citing Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994))). To be sure, the undersigned noted on the record at sentencing that Attorney Pasano was "probably one of the best advocates of his client that I've had before me in trial" (doc. 688 at 157). Defendant's complaints about perceived inadequacies in counsel's investigation do not rise to the level of showing constitutionally deficient performance.

---

[24] In its response, the Government identified six witnesses who were not called at trial and explained why they were either not critical or were potentially damaging to Defendant's case (doc. 1040 at 31).

**Ground Seventeen**

Defendant contends that trial counsel was constitutionally ineffective because he failed to investigate Government witnesses and impeach their testimony. This ground fails for essentially the same reason as Defendant's previous claim and, additionally, Defendant has failed to show prejudice.

Defendant asserts that if counsel had investigated, he would have learned that much of the testimony and evidence presented at trial had been stolen by former employees of Defendant's companies, and that the witnesses should have been impeached with respect to their theft of documents (doc. 1026 at 28). Defendant does not deny that the documents in question constituted valid evidence of criminal conduct, only that the manner in which the Government obtained the documents was suspect.

Defendant contends that there was a "lot of evidence" pertaining to Tom Moran that, if obtained, would have discredited the specter of "neutral witness" that was presented to the jury. Defendant does not describe the evidence with any degree of specificity that would support a finding of constitutionally deficient performance by counsel.

Defendant also asserts that Reg Parker could have been impeached with a previous deposition he had given in 2004. Again, the nature of the suggested impeachment is not stated.

Defendant asserts that Brian Barclay and Brandon McCarthy could have been impeached with the fact that they made unemployment claims while working for Reg Parker for free after Parker closed LifeTime Capital and took them to his new company. It is unlikely that, even if true, these assertions would have totally undermined the jury's consideration of the two men's testimony or changed the outcome of the case.

Defendant also states that Richard and Ann Soberer, who testified that they bought viaticals from Defendant were not actually even investors, as the purchases they were referring to were purchases made by their son as trustee for a trust. Again, in light of the abundant evidence against Defendant and the number of investors who testified, even if Defendant's assertions are true, he has not shown that counsel's performance was constitutionally deficient.

Defendant next contends that the Government altered the file of insured Donald LaSussa to fit its theory of the case, and that although he presented his counsel with proof of same, counsel failed to impeach the Government's evidence when presented. Defendant cites the motion for judgment of acquittal filed by co-defendant Kathleen LaFrance in support of his assertion, but the motion does not prove or support his claim (doc. 409).

Defendant's blanket assertion that the credibility of the Government's witnesses was unchallenged is a conclusory and over broad statement that does not entitle him to relief.

**Ground Eighteen**

Defendant contends that counsel failed to use prior statements of witnesses Tina Nofziner, Gary Kozee, Steve Marquitz, and Charme Austin to impeach them.  He asserts that in 1998 these individuals were interviewed as part of an internal investigation he ordered after Nan Zima was terminated as President of LifeTime Capital.  According to Defendant, they all denied knowledge of anything improper when they were interviewed by the attorneys and investigators in 1998, which was contrary to their testimony at trial.

The Government posits that in order to conduct effective impeachment, counsel would have also had to call as witnesses the members of the firm who conducted the audit. This would have opened the door to cross examination regarding the manner in which the audit was conducted and the fact that despite the careful way in which the audit was conducted, the auditors had some serious concerns (doc. 1040 at 33).  It is not outside the realm of possibility that the witnesses could have denied or minimized their knowledge of wrongdoing when speaking with investigators in order to protect themselves at the time, while later seeking to cooperate for the same reason.

Thus, it was not unreasonable trial strategy for trial counsel not to use the allegedly contradictory statements, if he had them, as impeachment, and as such his performance was not constitutionally deficient.

**Grounds Twenty-One and Twenty-Two**

Defendant asserts that he and trial counsel had a conflict of interest for two reasons. First, he asserts that their interests diverged after the Government accused counsel and

Defendant of manufacturing the exculpatory Hagan email.  Defendant asserts that counsel's lack of familiarity with computers and his failure to investigate resulted in counsel's withdrawing the email, and that counsel was forced to withdraw from representing Defendant (doc. 1026 at 31).  This latter assertion is factually incorrect, as counsel continued as counsel of record and continued to file pleadings on Defendant's behalf through June of 2006 (*see* doc. 724).  Attorney Myles Malman did not file a notice of appearance until March 3, 2008 (doc. 757).

Second, Defendant contends that counsel basically "extorted" him during the trial. Defendant asserts that Attorney Pasano "threatened to quit in the midst of trial or at least [lie] down on the job unless Defendant paid him an extra $200,000.00" (doc. 1028). Defendant contends that this "extortion speech" came despite the fact that he had already paid counsel in full, up front, per contract.[25]  He has appended the affidavits of his parents, Joyce Svete and William Svete (doc. 1026-2 at 2–5), both of whom aver that they jointly paid Pasano an additional $90,000 during and after Defendant's trial because they had the impression that if counsel did not get more money, Defendant's trial would be in jeopardy (doc. 1026-2 at 2–5).  Defendant contends that this proves a conflict of interest between the two men, because Defendant's "sole objective was to win the trial" while counsel was burdened by financial concerns as a result of having underbid the case (doc. 1026 at 33).

An attorney's conflict of interest may deprive a defendant of his Sixth Amendment right to assistance of counsel.  Strickland, 466 U.S. at 692; Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).  The existence of a conflict of interest does not automatically require reversal.  Mickens v. Taylor, 535 U.S. 162, 168 (2002).  A conflict of interest will rise to the level of reversible constitutional error only if the defendant has demonstrated that "an actual conflict of interest adversely affected his lawyer's performance."  *Id.* (citing Cuyler, 446 U.S. at 348–49).  Defendant's conclusory allegations are insufficient to support a finding that counsel operated under a conflict of interest, much less that such a conflict adversely affected his performance.  *See* Caderno v. United States, 256 F.3d 1213,

---

[25] Defendant references an engagement letter with counsel at exhibit 22-1 (*see* doc. 1026 at 32), but this exhibit/letter was not attached to his memorandum.

1218–19 (11th Cir. 2001) (defendant must show that counsel actually actively represented his own financial interest during trial, not just that the possibility of an actual conflict existed). As noted above, this Court commented during sentencing on the quality of defense counsel's advocacy for his client (doc. 688 at 157).

**Grounds Twenty-Three, Twenty-Nine, and Thirty-Five**

Defendant asserts that counsel was constitutionally ineffective because he failed to make appropriate challenges based on the statute of limitations. Defendant notes that before trial a number of counts were dismissed due to the five-year statute of limitations.[26] He claims that because the Government introduced evidence of conduct that occurred both five years before the indictment and within the five-year time period preceding the indictment, the jury could have convicted him on either a valid or invalid basis.

Defendant concedes the admissibility of evidence outside the scope of the statute of limitations to prove the existence of a scheme that continues into the five-year time period, but he argues that such evidence is not admissible as a basis for prosecution for substantive offenses, which are not continuing offenses. The basis for his argument is unclear, as the substantive offenses were alleged to have occurred on dates certain. Furthermore, to the extent he contends that there was insufficient evidence to sustain his convictions on the substantive counts, this issue was decided against him on appeal, *see* United States v. Svete, 521 F.3d 1302, 1309 (11th Cir. 2008), and may not be relitigated herein. Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. By the same token, his claim that counsel was constitutionally ineffective because he failed to move for a judgment of acquittal based on the sufficiency of the evidence fails because counsel is not constitutionally ineffective for his failure to raise a meritless claim. Freeman, 536 F.3d at 1233; Lattimore, 345 F. App'x at 508; Brownlee, 306 F.3d at 1066.

Defendant contends that counsel was constitutionally ineffective for his failure to seek a limiting instruction. Defendant asserts that the jury should have been instructed not

_____

[26] The eight substantive offenses charged in the superseding indictment were alleged to have occurred on specific dates ranging from June of 1999 through July of 2000 (doc. 277). The original indictment included twenty-three substantive offenses dating back to December of 1998 (doc. 2).

to consider conduct that was outside the limitations period for the purpose of assessing guilt.  Again, the specific acts of which Defendant was found guilty had dates attributed to them.  The jury was instructed to consider each charge and the evidence pertaining to it separately (doc. 429 at 38).  It is unclear how the jury's consideration of acts outside of the statute of limitations would have affected its decision to convict on the substantive counts.

Even if counsel had raised the objection Defendant now asserts and moved to exclude the evidence of prior acts, the evidence would have been admissible, as it was "inextricably intertwined" with the evidence presented regarding the wrongdoing in the time period covered in the indictment.  "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."  United States v. Ducuara De Saiz, 511 F. App'x 892 (11th Cir. 2013) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir.1985)).

**Ground Twenty-Four**

Defendant asserts that trial counsel rendered constitutionally ineffective assistance when he failed to advise Defendant that he would essentially be forfeiting his right to appeal on a sufficiency of evidence claim if he testified in his own behalf.

On appeal the Eleventh Circuit noted that "[t]he jury, who heard Svete's testimony and witnessed his demeanor, was entitled to disbelieve Svete's testimony and was entitled to believe the opposite of Svete's testimony."  Svete, 521 F.3d at 1310.  It further stated that because of the "combination of Svete's testimony and the other corroborative evidence supporting Svete's convictions . . . the evidence was sufficient to support his convictions."  Id.

Defendant's characterization of these statements by the appellate court as suggesting that he had "given up his right to appeal" is disingenuous.  His testimony was not the only thing considered by the Eleventh Circuit; it specifically mentioned "other corroborative evidence."  521 F.3d at 1310.

Further, Defendant's citation to Padilla v. Kentucky, 559 U.S. 356 (2010), in support of his claim that counsel should have warned him of the collateral consequences of testifying, is misplaced.   An obstruction enhancement for giving false testimony is not a "collateral consequence" of testifying, but rather a direct consequence of testifying falsely, and something that should not be unexpected.   Defendant has not established a violation of his constitutional rights.

**Ground Thirty-Four**

Defendant contends that trial counsel was constitutionally ineffective because he failed to move for dismissal of certain counts of the indictment due to a lack of evidence. He asserts that the Government's aiding and abetting theory of guilt was invalidated by the Court's order in Rodgers.   As discussed *supra* (*see* discussion of Grounds Seven, Twenty-eight, and Thirty-three), this argument is without merit.   To the extent Defendant argues that the "direct perpetrator" theory is also invalid, he relies on his interpretation of the evidence, that the life expectancies were not altered.   This assertion is also without merit. The Government established that there was fraud, and Defendant's convictions were upheld on appeal.   Counsel was not constitutionally ineffective for his failure to make a meritless motion.   Freeman, 536 F.3d at 1233; Lattimore, 345 F. App'x at 508 (11th Cir. 2009); Brownlee, 306 F.3d at 1066.

**Grounds Thirty-Six, Thirty-Seven, and Thirty-Eight**,

Defendant claims that counsel was constitutionally ineffective for failing to object to Brady violations by the Government.   Part of the Government's theory of the case was that the life expectancies set forth in some of the letters had been fabricated by Defendant and his co-defendants by "cutting and pasting" signatures of doctors on bogus letters and then making a photocopies of the letters so that there would be no original.   Defendant asserts that the Government was in possession of all of the original life expectancy letters bearing the doctors' signatures in blue ink, but that the Government failed to turn this "exculpatory" evidence over to the defense.   He further asserts that counsel was constitutionally ineffective for allowing the documents in question to be turned over to the Government

without requiring a receipt.  Defendant maintains that the Government was permitted to knowingly levy a false theory of guilt without being held accountable.

The Government notes that the documents in question were subject to a grand jury subpoena and had to be produced absent the application of some sort of privilege.  It asserts that there were some original life expectancy letters that were disclosed during discovery and these letters were listed on the Government's pretrial exhibit list and/or introduced into evidence at trial during the testimony of doctors who had been hired to review records and provide the letters[27] (*see* doc. 622 at 255; doc. 664 at 116, 135, 218).  Defendant has not established the existence of a <u>Brady</u> violation, or deficient performance by counsel.

**Ground Thirty-Nine**

Defendant contends that his Sixth Amendment rights were violated by counsel's cumulative errors.   With respect to a trial, it is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. *See, e.g.*, <u>U.S. v. Ramirez</u>, 426 F.3d 1344, 1353 (11th Cir. 2005); <u>United State v. Preciado-Cordobas</u>, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993) (citing <u>United States v. Pearson</u>, 746 F.2d 787, 796 (11th Cir. 1984)); <u>United States v. Adams</u>, 74 F.3d 1093,1099 (11th Cir. 1996); <u>United States v. Thomas</u>, 62 F.3d 1332, 1343 (11th Cir. 1995).  However, "[a] defendant is entitled to a fair trial not a perfect one."  <u>Ramirez</u>, 426 F.3d at 1353 (quoting <u>United States v. Adams</u>, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing <u>Lutwak v. United States</u>, 344 U.S. 604, 619 (1953))).  The cumulative error doctrine, however, is inapplicable where the district court commits no individual errors.  <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004); <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing

---

[27] The Government's revised exhibit list includes reference to numerous generic doctors' letters, doctors' letters with respect to almost one-hundred individual viators, and numerous letters authored by a Dr. Wunderlich, most identified by the date on which they were written (doc. 384 at 19, 20, 21–24, 38–48, 56–66).

the number of non-meritorious claims raised will not support a finding of cumulative error because, "Twenty times zero equals zero."). The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims, and the Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Id. (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)). Thus, having found no error, there can be no cumulative error, and Defendant is not entitled to relief.

**Ground Forty**

Defendant contends that sentencing counsel was constitutionally ineffective for his failure to object to Defendant's 200-month sentence, which exceeded the statutory maximum of 60 months on the mail fraud convictions (Counts Three through Seven) for offenses under 18 U.S.C. § 1341 committed prior to July 30, 2002,[28] and that appellate counsel was constitutionally ineffective for failing to raise this issue on appeal.[29]

Initially, a § 2255 petitioner is not entitled to habeas relief if the statutory or constitutional error did not have a "substantial and injurious effect or influence in determining the jury's verdict" or the judgment. See Brecht v. Abrahamson, 507 U.S. 619, 622 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Any error here cannot be described under Brecht as exercising a "substantial and injurious effect or influence" on the judgment. 507 U.S. at 622. Even if Defendant's sentence on the mail

---

[28] On July 30, 2002, the mail fraud statute, 18 U.S.C. § 1341, was amended by the White-Collar Crime Penalty Act of 2002, 116 Stat. 804, which increased the penalties for the offense of mail fraud from a statutory maximum of five years of imprisonment to a maximum of twenty years of imprisonment.

[29] The superseding indictment states that the offenses in Counts Three through Seven were committed in 1999 and 2000 (doc. 277 at 26). Defendant was sentenced to a term of 60-months imprisonment on Count One, 200-months imprisonment on Counts Two through Seven, and 120-months imprisonment on Counts Eight through Ten (doc. 558; doc. 688 at 169).

fraud convictions exceeded the statutory maximum, because Defendant's 200-month sentence on Count Two was legally correct, any "error" in his sentence on Counts Three through Seven was harmless because a lesser sentence on these counts would have had no practical effect on Defendant's entire sentence.  *See* Roseboro v. United States, 882 F. Supp. 2d 566, 578 (S.D.N.Y. 2012) (finding same and noting that sentencing "error made no difference to the outcome of the case").

Additionally, and of greater import, the appellate court found this issue to be without merit.  The record reflects that the issue of whether Defendant's sentence on the mail fraud convictions exceeded the statutory maximum was raised by his counsel before the en banc court.  The en banc court remanded that issue and others to the original panel, which ultimately decided all issues against Defendant.  *See* Svete, 556 F.3d at 1170 (en banc court identifying issues to be remanded to panel for further consideration, including whether Defendant's sentence for the mail fraud counts exceeded the statutory maximum) and Svete, 565 F.3d at 1364 (panel affirming Defendant's sentence, after citing Svete, 556 F.3d at 1170, and noting that "any remaining issues" identified by the en banc court had been remanded for the panel's consideration).  Absent an intervening change in the law, an issue resolved against a movant on direct appeal cannot be relitigated in a § 2255 motion.  *See generally* Davis v. United States, 417 U.S. 333 (1974); *see also* Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343.  Defendant has not argued or shown any change of circumstances.  Therefore, to the extent he challenges the legality of his sentences, Defendant cannot relitigate this claim, and it is procedurally barred.  Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343.  Moreover, Defendant has failed to establish that either sentencing or appellate counsel was ineffective as to this issue.  The issue was ultimately raised on appeal by counsel, and it was considered and rejected by the Eleventh Circuit when it affirmed Defendant's sentence.  Sentencing counsel was not constitutionally ineffective for the failure to raise a meritless claim, *see* Freeman, 536 F.3d at 1233; Lattimore, 345 F. App'x at 508; Brownlee, 306 F.3d at 1066.

**Ground Forty-One**

Defendant contends that counsel's performance was constitutionally deficient because he failed to attend Defendant's presentence interview with the probation officer. Defendant has no Sixth Amendment right to the presence of counsel at such an interview. *See* United States v. Simpson, 904 F.2d 607, 611 (11th Cir.1990) (declining to address issue of right to counsel at presentence interview since it was not raised before the district court, but acknowledging that other circuits considering issue have concluded that interview with probation officer is not a critical stage of criminal proceedings at which counsel is guaranteed by Sixth Amendment) (citing United States v. Jackson, 886 F.2d 838, 843–44 (7th Cir. 1989); Brown v. Butler, 811 F.2d 938, 940–41 (5th Cir. 1987); Baumann v. United States, 692 F.2d 565, 577–78 (9th Cir. 1982)); United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993) ("[T]he presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir.1991) ("There is no such right (to counsel) at a routine presentence interview because the presentence interview is not a critical stage of the criminal proceedings."). A defendant cannot be deprived of his Sixth Amendment right to effective assistance of counsel where there is no constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586, 587–88 (1982). In the same vein, counsel is not required by the Federal Rules of Criminal Procedure to attend the presentence interview. Rule 32(c)(2) provides only that the probation officer "must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview." Fed. R. Crim. P. 32(c). Thus, Defendant has not established that counsel's performance was deficient, constitutionally or otherwise.

**Grounds Forty-Two, Forty-Three, and Forty-Six**

Defendant contends that sentencing counsel was constitutionally ineffective, in essence, for failing to mount a meaningful challenge to the Government's loss amount figures at sentencing. He asserts that counsel should have investigated the facts regarding the loss amount, objected to sentencing enhancements that were barred by the five-year statute of limitations, and called an expert witness to analyze the financial transactions. He also asserts that the loss amount stated at sentencing was "dramatically over-stated"

(doc. 1026 at 39). Neither Defendant's conclusory assertions that such actions on the part of counsel would have changed the outcome of the proceedings, nor his dissatisfaction with the Court's assessment of the evidence at trial entitles him to relief.[30] Furthermore, Defendant has not shown prejudice. The Eleventh Circuit specifically stated that the "district court correctly concluded" that the loss amount was "certainly over 80 million," which was the threshold amount needed to support the eighteen-level upward adjustment. Svete, 521 F.3d at 1318; (PSR ¶ 90 citing U.S.S.G. § 2F1.1(b)(1)). He is not entitled to relief.

**Ground Forty-Four**

Defendant's memorandum reflects that he has dismissed and/or abandoned this claim (doc. 1026 at 50 n.75).

**Ground Forty-Five**

Defendant contends that trial counsel was constitutionally ineffective in that he failed to object to the restitution amount proposed by the Government after the initial sentencing. He also contends that counsel was constitutionally ineffective because he failed to object to Defendant being sentenced again in absentia, and that this prejudiced Defendant due to his inability to mount a defense.

Defendant is incorrect to the extent he represents that counsel made no objection to the restitution amount. At the sentencing hearing on June 23, 2005, counsel did argue on Defendant's behalf on this issue (see, e.g., doc. 688 at 143–46). Counsel also made a specific request that the restitution order contain an appropriate provision for credits upon future events such as policy maturity (id. at 156). Furthermore, the Sentencing Guidelines support the Court's restitution assessment. Section 5E1.1(a)(1) of the Sentencing Guidelines provides that the Court shall enter a restitution order for the full amount of a victim's loss. In calculating the amount of loss, the district court "need only make a

---

[30] The Government argues that Defendant's conviction of two conspiracies renders him liable for all losses reasonably foreseeable. "[W]hen a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable mathematical limit of his scheme, rather than his concrete result. A criminal pays the price for the ambition of his acts, not their thoroughness." United States v. Patterson, 595 F.3d 1324, 1327 (11th Cir. 2010).

reasonable estimate of the loss"   *See* U.S.S.G. § 2B1.1, comment (n.3(C)); United States v. Grant, 431 F.3d 760, 762 (11th Cir. 2005).   The Guidelines further provide that on appeal, the sentencing court's determination is entitled to "appropriate deference" due to that court's unique position to assess the evidence and estimate the loss based on that evidence. U.S.S.G. § 2B1.1, comment (n.3(C)).   In the instant case, the Court initially stated that it would award $130 million in restitution, but then indicated it would delay making the restitution award for 90 days, as permitted by statute, and await additional information from the receiver to ensure the accuracy of its determination (*id*. at 153–56). The record reflects that on August 1, 2005, the Government filed an in camera notice to the Court regarding restitution amounts (doc. 576), and on August 4, 2005, it filed a supplemental notice explaining payments and disbursements that had been made (doc. 584).   On August 11, 2005, this Court entered an amended judgment ordering restitution in the amount of $100,722,605.34 (doc. 593).  There was no separate hearing before entry of this amended judgment; thus, there was no violation of Defendant's rights.

**Grounds Forty-Seven and Forty-Eight**

Defendant contends that his rights were violated because he was convicted of a non-existent money laundering conspiracy in that the Government failed to allege or prove that he conspired to launder the profits or the gross receipts of the unlawful activity. Defendant bases his sufficiency of the evidence argument on the Supreme Court case of United States v. Santos, 553 U.S. 507 (2008), which held that the word "proceeds" for purposes of a prosecution involving a stand-alone illegal gambling operation means "profits" and not "receipts."   Defendant himself acknowledges that the argument he now presents; ie. that Santos should be retroactively applicable to the situation in his case, is foreclosed by the Eleventh Circuit's decision in United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009).   The Demarest court noted the narrow holding of Santos and declined to extend it any further than an unlicensed gambling operation.  Defendant argues that counsel still should have made this argument because other circuits have taken a more expansive view.   As has been noted previously, counsel is not constitutionally

ineffective for failing to make a motion that is destined to fail. *See* Haley, 306 F.3d at 1066; Meeks, 216 F.3d at 961; Jackson, 42 F.3d at 1359.

**Grounds Forty-Nine through Fifty-Four**

Defendant also assails the performance of appellate counsel and contends that his appellate attorney was constitutionally ineffective for failing to raise several issues on appeal. Defendant asserts that counsel should have appealed the denial of his pre-trial motion to dismiss the indictment based on governmental misconduct (docs. 175, 248) and the granting of the motion in limine to exclude evidence of the acquittals in the Rodgers case (doc. 401)[31]; that counsel should have argued that the evidence was insufficient to support his convictions because the aiding and abetting theory was legally invalid and there was insufficient evidence to support the direct perpetrator theory; that counsel should have challenged the Government's attempt to raise new arguments in its petition for a rehearing and/or to change its legal theory midstream; and that counsel should have presented the alternative argument that in the event the Eleventh Circuit overruled Brown, the ruling should only apply prospectively and not to Defendant's case.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal. Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–27 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991). It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* Payne v. United States, 566 F.3d 1276,

---

[31] The oral order granting the motion in limine did not bear a docket number (*cf.* docket entries 411, 412, both of which reflect oral orders).

1277 (11th Cir. 2009) (citing Smith).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Barnes, 463 U.S. at 751–52.  In fact, this is the "hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986).  The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. Id.; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).

Defendant's appellate counsel raised a myriad of issues on appeal, many of which warranted significant discussion by the appellate court.  While Defendant's desire to raise every conceivable issue on appeal is understandable, the fact that the issues that counsel chose to pursue were ultimately unsuccessful does not mean that the issues now suggested by Defendant would have had a greater chance of success.  Likewise, counsel's failure to raise other potentially viable issues render counsel's performance constitutionally ineffective.  In short, Defendant has not shown that appellate counsel's performance, viewed in its entirety, was below constitutional standards.

**Ground Fifty-Five**

Defendant contends that appellate counsel had a conflict of interest because counsel abandoned potentially meritorious issues during the en banc stage of the direct appeal in favor of counsel's interest in the larger implications of Defendant's case.  According to Defendant, appellate counsel believed that Defendant's case was "much bigger than [Defendant]" and that regardless of the outcome, it would likely go to the Supreme Court.  As a result, Defendant contends that counsel focused on the lone issue that might give counsel the opportunity to argue before the Supreme Court rather than arguing the various claims Defendant wanted counsel to raise.  Defendant's argument fails because, as noted by the Eleventh Circuit in its en banc opinion, its review was limited to the single issue that it decided to consider en banc.  Svete, 556 F.3d at 1170.  Thus, counsel was limited to the lone issue under consideration by the en banc court.

**Ground Fifty-Six**

Although listed as a separate ground for relief, Defendant's final claim merely requests that the Court hold an evidentiary claim as to every claim raised in Defendant's § 2255 motion.  This request will be denied, as no evidentiary hearing is warranted.

<u>Conclusion</u>

For all of the foregoing reasons, this Court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  He has also failed to show that an evidentiary hearing is warranted.  Therefore, Defendant's motion must be, and is, denied in its entirety.

<b>Certificate of Appealability</b>

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  A certificate of appealability is therefore denied.

Accordingly, it is **ORDERED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 1003) is **DENIED**.

2.      A certificate of appealability is **DENIED**.

At Pensacola, Florida, this 11th day of March, 2014.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**